Good morning. Good morning, Your Honor. May it please the Court, my name is Nathan Cassabon and I represent the appellant in this matter, Mr. Lance Reberger, as pro bono counsel. Before I begin, I'd like to reserve three minutes of my time for rebuttal, please. Keep your voice up now. Mr. Reberger is an HIV-positive inmate who has been segregated from the general prison population. He takes medication as treatment for his HIV to prevent it from maturing into AIDS. He has alleged in his complaint that under the conditions of his segregation he does not receive the same medical treatment as the general prison population. And as a result, he sometimes misses doses of his medication which will cause his body to build up a resistance to it and cause his disease to progress from HIV to AIDS, which will cause him to die sooner. Counsel, as I read this, I mean, I certainly empathize with him, but it seems like this is pretty speculative, is it not? I mean, he recognizes some of where he's going is so-called to get so-called HIV treatment. He obviously is not. So he would see a so-called HIV specialist. But he doesn't indicate why administrative segregation would cause him to miss doses. He doesn't allege that the prisoners in administrative segregation are transferred much more frequently than prisoners in the general population. And he suggests that the transfers in this case are in fact because he needs to see a so-called HIV specialist. So although hypothetically what he talks about, maybe he can make out a case for that, but why is he being treated in a way that will exacerbate, complicate his HIV condition? Thank you, Judge Smith. The pleading standard for pro se prisoners, the complaints are to be construed liberally. And on pages 35 and 36 of the excerpts of record are the portions of his complaint where he says that he is sometimes denied or he sometimes has to suffer the inconvenience of being denied any HIV medication, which is a pretty serious inconvenience as it could lead to... As he alleges, any specific failure to be treated? I mean, I know he speaks in general terms of this, but I mean, is there any... I know we're not talking Nick Baltromboli here, but there's got to be some specificity, does there not? Well, I don't believe that there's a... If I understand your question correctly, it sounds like you're asking if he's alleged a specific place that he's... Yeah, in other words, did he say, you know, I was supposed to get my medication on X date. I didn't get it. Am I supposed to get it again on Y? I didn't get it. And the reason I didn't get it is because I was in administrative segregation. I got moved from point to point. I don't see any allegations of that nature. I see very general, vague things where he says that he might miss them because he's in administrative segregation and he might have this happen and he's being moved to get, in quote, so-called treatment by a so-called HIV specialist. I don't find any specific allegations that says he missed doses. The fact that he's concerned that he's going to be moved so that he sees a so-called HIV specialist suggests to me anyway that at least the present system recognizes he has HIV and they're having him go to a specialist. He may not like the specialist. He may not agree with the specialist, but they're at least cognizant of his condition. Help me with this. I don't see any specificity. I don't see any express allegations. I'm seeing pretty vague, general allegations, which even construed liberally, you've got to have something to hang on to. I've taken a look at your citation. He says, but most importantly, being able to receive and consume his HIV medications without any inconvenience of being denied any HIV medication dose that could lead to medications resistance due to him having to transfer every three to six months. Tell me, where is the allegation that he didn't receive his HIV medication? Right, well, I'm going to try to answer both questions at the same time. First, as to Judge Smith's question, the complaint doesn't specifically say that he was supposed to go to a certain doctor at a certain time and missed receiving a dose. However, it's correct that the prison recognizes that he has HIV, which is one of the reasons why he's segregated. And what he alleges is that part of his segregation is he has to transfer from prison to prison, which the general prison population doesn't have to do. He has to what? He has to transfer from different facilities in order to see the so-called HIV specialist. All right, so now they recognize he has HIV. He has to transfer. However, I'm still wondering, as is Judge Smith, where is the allegation I didn't get HIV medication as a result of the segregation? Right, well, he says here, and I guess it's paragraph 2 on 35, that he is deprived of everything a regular prison yard prisoner receives, such as better doctor care. Such as programming, packages, access to a law library, doctor care. The kitchen sink. But where's the allegation I'm not getting my medication as a result of segregation? Well, I believe that it's the same sentence that you read back, but my understanding of it is a little different. He says that, most importantly, he's deprived of being able to receive and consume HIV medications. It's in the subjunctive. Sorry? It's in the subjunctive. It's not in the indicative. He's saying, I could be receiving this. So the way I read the sentence is that being denied the medication could lead to HIV medication resistance. But he doesn't say that he was denied the medication. He says, in his sentence, he says that he has been deprived of everything a regular prison yard receives. And the sentence doesn't end. He says, including, most importantly, being able to receive and consume his HIV medications without inconvenience of being denied. But, again, as my colleague indicated, it's all in the subjunctive. It's all speculative. Is it your suggestion that under the law, because he's a prisoner and we construe his allegations liberally, that all he has to do is to say that, you know, this might happen to me, this could happen to me, and that's sufficient? For the purposes of the Prison Litigation Reform Act, the imminent danger exception is a procedural screening mechanism where, combined with the liberal construction, the court can look at this and say, there is an allegation of an imminent threat of serious physical injury so that he should be permitted to proceed without paying the filing fees. Now, once the screening mechanism is passed, it may be that the district court says, you need to amend this complaint because it's not specific enough. But given the liberal construction and that we're— It's your position that, given the nature of the Prison Litigation Reform Act, that even if somebody alleges something that is, you know, completely out in the left field somewhere, any specific allegations, but just talks about the possibilities of what might happen. You know, I'm in—alleged I'm in administrative segregation. I find that I get dizzy in there. I might fall. I might hit my head. I might kill myself. I might have a bruise. I might have a concussion. Is that enough to say to get you out of administrative segregation based upon imminent physical danger? I wouldn't go so far as to say any allegations out in the left field. But given the liberal construction that's afforded to pro se inmates, this can be specific enough. Could be? Or is? I believe it is. I recognize that Judge Beah has read this in a way that it didn't occur to me earlier that perhaps— He's a very smart guy. Yes, he is. English is my second language. Some of the examples that you gave earlier, though, were held to be sufficient in— Do you understand the question? The question, and that's—you can answer, I suppose. The question is, is it required that he allege that something is happening to him or will happen to him rather than something could happen to him? And isn't that what he has alleged, that something could happen to him? Well, the statute says that there has to be an allegation of imminent danger of serious physical injury. This court has held in Andrews v. Cervantes that that's a two-pronged test. The first prong is that there has to be an allegation of imminent danger, which can be met either by alleging a continued practice that has caused injury to the prisoner or others in the past. And the second is an allegation that's sufficiently obvious without showing a past injury. Now, in that case, what was at issue was the prisoner had alleged that he was at risk of contracting HIV and hepatitis C. However, in footnote 10, this court stated that the HIV allegations on their own would have been enough. Here, the prisoner already has HIV, and he's alleging that because of his segregated conditions, he's not getting the medication that he needs. But he's not saying that. He's not saying he's not getting the medication. He's saying that because I don't get all of the other things that they get, I'm not able to receive and consume my medication without any inconvenience of being denied. It sort of sounds like he's worried about him not receiving the medication, but he doesn't say, I'm not receiving the medication. Well, I think it's a pretty serious inconvenience, missing doses of HIV medication. So he does say it's an inconvenience, but he says that he's denied HIV medications that could lead to resistance. But isn't his inconvenience the fact that he might fail to receive them in a way he wants to? Maybe I can cut to what I think the heart of the question is. He has not alleged a specific instance where he was denied treatment. My proposition is that the liberal construction pursued or given to pro se litigants is enough to find that there's a danger here, and at the very least he ought to be given the opportunity to amend his complaint to allege whatever the court may find is missing. So what you're asking us to do then basically is to construe the law in a way that has not been construed before to indicate that the possibility that something might happen is sufficient to meet the requirement under Cervantes. I don't think that's what we're asking. I think what we're asking is to read his complaint and find that it has sufficiently alleged a danger of... Okay, but perhaps I didn't state it in an appropriate way. What my colleagues and I were all asking is, he didn't make a specific allegation that he'd been denied anything, and you've confirmed that, but you're saying that the fact that he's inconvenienced by the fact that he might not in the future get things in the way he wants is enough to meet the requirements of the PLRA. Is that a fair statement? I think so. Being transferred from one prison to another as a result of his conditions of segregation... Even if, as he himself seems to have acknowledged, he's going to go see an HIV specialist. That's one of the reasons for the transfer. Right, but the reason he's transferred is because he's segregated. HIV-positive prisoners in the general prison population don't have to be transferred to see an HIV specialist. Well, some of them don't. We've heard cases even today where people get transferred. They don't want to do it, but they get transferred anyway. Right, well, that's the allegation. We have other cases this week where people say that I had these materials in my cell and I got transferred. I didn't get those. I didn't get to use the library. I got transferred. People get transferred all the time, not just because they have HIV. And some people are in administrative segregation not just because they have HIV. But here, as I understand it, there's a clear acknowledgment that your client has HIV. There is a clear acknowledgment by his own admission that one of the reasons for his transfer is to see a so-called HIV specialist. And he has not made any allegations that he was denied medication. He's just concerned that it might happen. And you're saying that's enough to satisfy this requirement. I see I'm almost out of time. So what the allegation is, he hasn't alleged a specific instance where he has missed a dose of medication. But the complaint, as liberally construed, complains that it happens or that he's in danger of it happening. I'd like to reserve the rest of my time for rebuttal if I could. Thank you, Your Honors. And may it please the Court, Joseph Tartakosky for the State of Nevada. I would respectfully submit that Mr. Eberger's allegation was not that he's not getting his HIV medication. He's saying that something about this prison rule results in him getting it in a way that he doesn't like, which is a very different thing. His claim has morphed on appeal. There's been some words that have been juggled and some words that have been omitted. He's not getting his drugs without any inconvenience has now become the inconvenience of not getting medication, which is a sort of odd formulation that you find it inconvenient to get drugs on which your life depends. Counsel uses the words missing doses in his brief 11 times. Mr. Eberger never uses the word missing doses. Not only does he not give a specific date that he didn't get the drug, he doesn't even say he never got the drug. Where Mr. Eberger said this rule in the hands of a cruel prison official could be used to inflict damage on his immune system has become is inflicting damage on his immune system. Well, he does allege that he's being deprived of everything a regular prison yard prisoner receives, most importantly being able to receive and consume his HIV medications. If you take those words just by themselves, doesn't that allege that unlike other prisoners, he is not receiving his medications? Yeah, he says that. It's contradicted, of course, by the face of the rule that governs how HIV inmates are treated, but I would point you to the word... If he says that all other inmates receive their medications timely, but I don't, isn't that, can't one infer from that that he's alleging he's not getting his medications? I would say no, Your Honor, for a few reasons. The whole record in this whole case with respect to this imminent danger exception is this one sentence, and the words without any inconvenience, I think, are the key. Now, what he means by inconvenience is not clear, but it has to mean something. A fairly common complaint in prison is that they don't like that they get these pills through something called pill call. The nurse brings it. The nurse has to watch the prisoner swallow it. They may not like the time the nurse comes by. They may not like something about the prescription. He seems to have a problem with the fact that he has to be transferred for some... So what you're saying is he's not really alleging he's not getting his medications. He's saying he's not getting his medications without an inconvenience... Yes, that's what I'm saying. ...being denied, which could lead to drug resistance. That's what I'm saying, and we have some... You put that all together, and it's speculative rather than actual. Yes, as speculative and conclusory as it gets. And, of course, it is his burden, so anything that's speculative, conclusory, and specific is on him. But we have some... There's the text of what he says, but we have some other corroboration. For instance, the district court didn't find imminent danger, and she dismissed this possibility of a 1915G exception with a single sentence. She said not only had he not shown it, but that the subject matter of his complaint didn't even pertain to something like missing medication. She read, this is Judge Dew, she read this as being an attack, basically an equal protection attack, on how they treat HIV versus non-HIV-infected inmates. And even so, suppose she missed what he was actually saying, as opposed to what counsel is saying. He had a chance to amend. She says, you're not even saying anything that has to do with imminent danger. When he moved to amend, did he want to add anything about the HIV allegation? No, he wanted to make this a class action. In other words, make this even less specific to him. He also didn't bring up the HIV in his informal brief before the court. So I don't think that's what he's alleging. But even if, supposing, you construed it the way counsel wants, it would still be insufficient. It's still not a plausible claim. Even under the most liberal construction, the no-displeading standard, he's saying that at some point in an eight-and-a-half-year period, he didn't get medication whose names he can't give. He doesn't say when the medication prescription started. He doesn't say when it ended. He doesn't say how many times he supposedly didn't get it. Was it one time in eight-and-a-half years? Was it every day for a six-month period? And he doesn't suggest anything with respect to any symptoms that might have occurred. But under Andrews v. Cervantes, he has to have specific allegations or a pattern of misconduct. And by the way, Andrews v. Cervantes is the lead case on what imminent danger means. The inmate there had said he was being put with contagious inmates. That was not enough. The magistrate judge gave him leave to bring it out further.  He objected to the report and recommendations. So by the time this circuit considered the factual allegations of Andrews v. Cervantes, the court had three separate papers from the inmate, two of them specifically directed to showing what the imminent danger was. Mr. Rehberger hasn't alleged that virtually at all. And as I say, again, his burden. I mean, just to give one last example and I'll move on. If you had a malpractice claim against a doctor and you said you were supposed to give me drugs and all the complaints said was that over an eight-and-a-half-year period, you didn't give me drugs, I can't say how often, I can't say what drugs, I can't give you a single date, I don't think that would be enough. Let me move on to the strikes. We believe, unless you have any further questions on the imminent danger, we believe that he has six strikes. The three appellate decisions were specifically addressed. This Court has asked the parties to address them, the three appellate dismissals. So if he has six strikes and this Court is aware of them, it seems in that light somewhat beyond the point to address whether one or two of them is in fact. I gather the State takes the position that in light of the petitioner's recent 28-J letter, acknowledging the effect of Ritchie v. Dehue, that the idea that basically offender management is a strike is clear now. There's no question that the fact that they were still on appeal doesn't, in other words, it's a strike, it doesn't matter if we're still on appeal, right? That's right. I think that's our position, but I think they've conceded. I guess my question to you is have they conceded that? That's my reading of what they've said. Maybe you'll tell us when it comes up, but I gather they have conceded that point now. I think they've conceded that three times. In their response brief they said, if it turns out that Coleman goes against us and just because something's on appeal, it's still a strike and it counts against us, you'd still only have two strikes. In both of their 28-J letters they acknowledge that civil is no longer good law, that this was, in fact, always a strike and should be counted against him. I think they've left aside offender management. It's clear that the statute says a strike is a strike. So long as the court's aware of it, it has to count it against them. I mean, 1915g is almost a jurisdictional law. It says in no event can a court authorize an informer pauper's proceeding if the inmate has three strikes. So that just leaves the suitor decision. The suitor decision gives every indication of having been dismissed for having no basis in law or fact, which is the definition of frivolousness. You can look at at least three things. The text of the decision, Judge Hicks used the phrase, I'm dismissing for failure to state a claim twice. You can look at the substance of the analysis. He says, I'm dismissing this case for the following reasons, plural. The first two paragraphs following that are his immunity analysis. Then he says, further, I'm certifying that this is not in good faith, citing Coppedge, which is the Supreme Court case, that says that when a district court labels a decision, a case, a complaint, not in good faith, that's tantamount to a finding of frivolity. This court said the same thing, and Nat V. Hogan. I gather, counsel, that on the suitor case, it's the fact that on the face of the complaint, it was clear there was qualified immunity, right? If it weren't on the face of the complaint, we might have a different issue here. Is that correct? That's correct. But I think he had independent grounds for dismissing. So immunity cases can often be very close, and you could find that a defendant's immune, and it goes up, and the court will hear that. But the issue for this court with respect to interpreting Judge Hicks' order was Judge Hicks saying that you have a potentially meritorious claim, but you picked the wrong defendant. You have an immunity problem. Or was he saying that you've sued Bill Souter, the clerk of court, for forcing you to file a pro se cert petition, and that that is a wholly invented, non-existent, non-cognizable right, no matter what defendant you pick. In other words, it has no basis in law or fact, and that's why he certified it as frivolous. And as a third sort of confirmation, this court didn't just affirm Judge Hicks' order. It sua sponte called it frivolous. So if it's frivolous above, it suggests that it's frivolous below. Immunity was one ground of Judge Hicks' decision, but he also dismissed it for failing to state a claim, and he clearly labeled it frivolous. So that would bring us to three strikes. So unless this court has any questions, I will sit down. Thank you, sir. Thank you, Your Honors. You saved a minute for rebuttal, Mr. Kesselman. Can I just ask you right off the bat, do you concede that the offender management case is a strike? Yes, we have no argument with offender management division. With regard to the suitor case, you don't think that suing the clerk of the Supreme Court on the grounds that he stated was frivolous? Well, the Prison Litigation Reform Act lists specifically three grounds that count as strikes in Section 1915G. In Section 1915, I believe it's EU1, it lists four grounds on which case in which the court has to dismiss as part of the screening mechanism. Also in Section 1915, Big A, which is the screening mechanism before the defendant is admitted. The fourth ground that it lists is suing immune defendants for monetary relief. Now, the suitor complaint only seeks monetary relief. And this court in Andrews v. King also said that before Section 1915G can be used as a ground for barring informed apopera status, the district court should conduct a careful examination of the underlying order. And the only reason given in the dismissal order in suitor was that the named defendants were immune from monetary relief. So I see I'm out of time, but the suitor case shouldn't count as a strike because it's not one of the three grounds enumerated in Section 1915G. It is excluded under other screening provisions as a separate ground, which Congress likely considered a different ground because prisoners may not know who the right people are to sue or what type of relief to seek, even though they have been wronged. Thank you, Mr. President. I'm taking it past your time. The Court thanks both counsel. And we come to the last case on today's calendar.
judges: Farris, Bea, M. Smith